UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ADOLFO URIZAR REYES,

                      Plaintiff,                             **REPORT AND**
                                                        **RECOMMENDATION**
       -against-                           CV 22-1176 (JMA)(AYS)

CAPITAL ONE FINANCIAL CORPORATION,
CAPITAL ONE, N.A., and
CAPITAL ONE BANK (USA), N.A.,

                        Defendants.
----------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Before the Court, on referral from the Honorable Joan M. Azrack, is Defendants' motion

to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff

opposes the motion. For the following reasons, this Court respectfully recommends that

Defendants' motion be granted in part and denied in part, but that Plaintiff's Complaint be

dismissed in its entirety nonetheless.

BACKGROUND

      The facts set forth below are drawn from Plaintiff's Complaint and the attachments

thereto. They are construed, as required in the context of the present motion, in Plaintiff's favor.

      Plaintiff, Adolfo Urizar Reyes ("Plaintiff" or "Reyes"), is a resident of Suffolk County,

New York. (Compl. ¶ 6.) Defendant Capital One Financial Corporation ("COFC") is a Delaware

corporation with its principal place of business in McLean, Virginia. (Id. ¶ 7.) Defendants

Capital One, N.A. ("CONA") and Capital One Bank (USA), N.A. ("COBUSANA") are national

banks, both also with their principal places of business in McLean, Virginia. (Id.) CONA and

COBUSANA are wholly owned subsidiaries of COFC. (Id.) Jurisdiction herein is based upon

diversity. (Id. ¶ 11.)

1

On or around March 4, 2016, Plaintiff opened a Simply Checking Account (the "Account") at Defendants' branch location in East Hampton, New York. (Id. ¶ 14.) On or about September 20, 2020, Defendants froze Plaintiff's Account, as well as the debit card and credit card associated with the Account, without any explanation to Plaintiff. (Id. ¶ 17.) As a result, Plaintiff was unable to access any money in the Account. (Id.)

Plaintiff attempted to resolve the issue of the freezing of the Account, but was unsuccessful. (Id.) Thereafter, Plaintiff retained an attorney to assist him in attempting to unfreeze the Account. (Id. ¶ 18.) Ultimately, through the help of counsel, Plaintiff learned that there was an issue concerning the deposit of either a single check in the amount of $4,500.00 or possibly two checks totaling $4,700.00. (Id. ¶ 20.) However, Defendants did not return the monies that cleared to the person who wrote the check(s). (Id.) Nor did Defendants explain to Plaintiff why this issue permitted them to freeze the Account and the cards associated with it. (Id.)

On or around January 12, 2021, Defendants mailed Plaintiff a check in the amount of $6,521.80, with a notation on the stub "Customer Request close out – No link," and the words "NOT VALID AFTER 90 DAYS" on the face of the check. (Id. ¶ 21.) Because Plaintiff's Account contained $21,595.22 at the time it was frozen – and the check sent to Plaintiff was well below that amount – Plaintiff did not cash the check. (Id. ¶ 22.) The check expired after ninety days and Defendants did not issue a further one. (Id.)

By letter dated August 13, 2021, the attorney assisting Plaintiff with his Account issues reached out to an attorney for Capital One with whom she had a personal friendship, attempting to find out why Plaintiff's Account was frozen. (Id. ¶23 and Ex. 4, annexed thereto.) Defendants thereafter sent Plaintiff a letter, dated September 20, 2021, stating that they had received an

inquiry from his attorney and that "[i]n order for Capital One to release any information related to the status of the account, the funds therein, and investigation that lead [sic] to our ending of our banking relationship, we must receive a subpoena." (Compl. ¶ 31 and Ex. 5, annexed thereto.) Plaintiff thereafter obtained a subpoena and issued it to Defendants. (Compl. ¶ 43.) Unsatisfied with Defendants' response to the subpoena, and surmising that Defendants may have submitted a suspicious activity report ("SAR"), pursuant to the Bank Secrecy Act – which prohibits Defendants from responding to the subpoena – Plaintiff sought legal action. (Id. ¶ 44.)

Plaintiff commenced the within action on March 3, 2022, alleging nine causes of action: (1) breach of contract; (2) violation of Section 349 of the New York General Business Law; (3) violation of Section 350 of the New York General Business Law; (4) breach of the covenant of good faith and fair dealing; (5) negligence; (6) negligent infliction of emotional distress; (7) fraud; (8) violation of Section 5-501 of the New York General Obligations Law; and, (9) for declaratory and injunctive relief. (Id. ¶¶ 50-116.) Plaintiff seeks statutory and compensatory damages. (Id. Wherefore Clause.)

Defendants move to dismiss Plaintiff's Complaint, pursuant to Rule 12(b)(6), on the following grounds: (1) Plaintiff's claims are preempted by the Bank Secrecy Act, 31 U.S.C. §§ 5310, et seq.; and, (2) even if not preempted, Plaintiff's claims fail to state a claim for which relief may be granted. Defendants also seek the dismissal of COFC and COBUSANA, with prejudice, on the grounds that they are separate and distinct entities that have no relationship with Plaintiff. Plaintiff opposes Defendants' motion in its entirety. The Court now turns to the merits of the motion.

DISCUSSION

I.      Legal Standard

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)). "Facial plausibility" is achieved when "the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable of the

misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general

rule, the Court is required to accept all of the factual allegations in the Complaint as true and to

draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation

omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a

legal conclusion couched as a factual allegation"). "While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations," which state a claim

for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of

'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555

U.S. at 557).

While the facts to consider in the context of a Rule 12 motion to dismiss are generally

limited to those set forth in the pleadings, a court may consider matters outside of the pleadings

under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may

consider: (1) documents attached to the complaint as exhibits or incorporated by reference

therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Applying these principles here, the Court has considered the documents annexed to Plaintiff's Complaint in rendering this Report and Recommendation.

II.   Preemption

Defendants' first argument in support of dismissal is that, pursuant to the "safe harbor" provision of the Bank Secrecy Act ("BSA"), 31 U.S.C. § 5318(g)(3) – known as the Annunzio-Wylie Anti-Money Laundering Act of 1992 (the "Act") – they are immune from all of Plaintiff's state law claims. (Def. Mem. of Law 4-6.) In response, Plaintiff argues that granting Defendants immunity from suit under the BSA would defeat a "major questions" analysis. (Pl. Mem. of Law 5.)

Pursuant to the Act, financial institutions, like Defendants herein, have the power to report suspicious transactions to the appropriate authorities; some disclosures being mandatory and others being voluntary. See Nevin v. Citibank, N.A., 107 F. Supp. 2d 333, 340 (S.D.N.Y. 2000). To encourage financial institutions to report possible criminal activity, the Act provides the institutions, as well as their officers, employees and agents "complete immunity" from suit for their having reported or disclosed a possible crime. Id. Known as a "safe harbor" provision, the Act provides:

> Liability for disclosures. Any financial institution that makes a disclosure of any possible violation of law or regulation or a disclosure pursuant to this subsection or any other authority, and any director, officer, employee, or agent of such institution, shall not be liable to any person under any law or regulation of the United States or any constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the person involved in the transaction or

5

any other person of such disclosure.

31 U.S.C. § 5318(g). The Act explicitly states that financial institutions enjoy immunity from suit whenever they disclose "any possible violation of law or regulation." Id. This requires the filing of a SAR by a financial institution for the "complete ambit of criminal behavior," as well as "whenever a financial institution detects 'a known or suspected violation of federal law, a suspected transaction related to money laundering activity, or a violation of the Bank Secrecy Act." Nevin, 107 F. Supp. 2d at 341 (quoting 12 C.F.R. § 208.20(d)).

Known as a "safe harbor" provision, the Second Circuit has extended it to not only well-founded reports, but also those that turn out to be erroneous. See Lee v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir. 1999). "'[T]he plain language of the safe harbor provision describes an unqualified privilege,' one that 'does not limit protection to disclosures based on a good faith belief that a violation has occurred.'" Nevin, 107 F. Supp. 2d at 341 (quoting Lee, 166 F.3d at 544). "The safe harbor provision applies, regardless of whether the SAR is filed as required by the Act or in an excess of caution." Smith v. Fleet Bank, No. 3:03CV1052, 2005 WL 1490012, at *2 (D. Conn. June 23, 2005) (quoting Lee, 166 F.3d at 544).

While Defendants herein would be immune from suit for the filing of any SAR pertaining to Plaintiff, it is not possible for the Court to reach that conclusion based solely on Plaintiff's Complaint and the documents attached thereto, which are the only documents the Court is permitted to consider at this stage in the litigation. Nowhere in the Complaint does Plaintiff allege that a SAR was filed or that Defendants made any sort of "voluntary disclosure of any possible violation of law." 31 U.S.C. § 5318(g). Rather,

Plaintiff merely surmises that a SAR <u>may have</u> been filed (Compl. ¶ 44), triggering Defendants to freeze Plaintiff's Account. Moreover, Defendants specifically state in their Reply Memorandum of Law that they "neither admit nor deny the existence or non-existence of a SAR in this matter" and note that the "possible existence [of a] suspicious activity report is advanced in the Complaint by the Plaintiff." (Def. Reply Mem. of Law 4 n.1). The lack of any allegation that a SAR was actually filed or that Defendants voluntarily disclosed the possibility of a violation of law is fatal to Defendant's motion to dismiss. <u>See</u> <u>Nevin</u>, 107 F. Supp. 2d at 342 (denying motion to dismiss on preemption grounds where "there [was] no allegation that an SAR was filed"). Accordingly, this Court respectfully recommends that Defendants' motion to dismiss be denied on this ground.

III.    <u>The Merits of Plaintiff's Claims</u>

Since this Court finds that, at this juncture, Defendants cannot claim immunity from suit, the Court turns to the merits of each of Plaintiff's claims. Having considered each of Plaintiff's claims, the Court finds that, for the reasons set forth below, Plaintiff's Complaint fails to state a claim upon which relief may be granted and as such, Defendants' motion to dismiss should be granted.

A.    <u>Breach of Contract</u>

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages. <u>Nick's Garage, Inc. v. Progressive Cas. Ins. Co.</u>, 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted). In alleging a breach of contract claim, a plaintiff is required to

"provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." <u>Levy v. Bessemer Trust Co., N.A.</u>, No. 97 Civ. 1785, 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997).

Here, the Complaint alleges that Defendants breached the parties' contract by freezing – and ultimately closing – Plaintiff's Account and thereby preventing him from accessing the monies deposited into the Account. (Compl. ¶¶ 53, 55.) However, as Defendants argue, the Account Disclosures – which form the basis for a contract between the parties, and which are quoted from extensively in the Complaint – explicitly state that Defendants "may close any account in our sole discretion at any time, for any reason and without notice to you." (<u>Id.</u> ¶ 16(d).) The Account Disclosures go on to state that if an account is closed "with a balance, we will notify you of our action and . . . send you a check for the collected balance in your account." (<u>Id.</u>) This is precisely what happened herein. Defendants froze and ultimately closed Plaintiff's Account – for reasons unknown to the Court at this time – and thereafter mailed Plaintiff a check for the balance existing in his Account at the time of closure. While Plaintiff disputes the amount of money in his Account at the time of closure – and therefore decided not to cash the check mailed to him – the Complaint fails to allege any breach of the contract by Defendants. Accordingly, the Complaint fails to state a claim for breach of contract and the motion to dismiss should be granted with respect to this claim.

B.     <u>Sections 349 and 350 of the New York General Business Law</u>

Defendants argue that Plaintiff's claims pursuant to Sections 349 and 350 of the New York General Business Law must be dismissed because the claims fail as a

matter of law. The Court agrees with Defendants.

Section 349 of New York's General Business Law prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349. To adequately plead a claim pursuant to Section 349, a plaintiff must demonstrate: "(1) that the defendant's conduct is 'consumer oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice." Wilson v. Northwestern Mut. Ins. Co., 635 F.3d 54, 64 (2d Cir. 2010) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995)) (additional citation omitted). Claims brought pursuant to Section 350 of New York's General Business Law, which concern false advertising, "have the same pleading standard." Alexanian v. Gov't Emp. Ins. Co., No. 21-CV-5427, 2022 WL 4648454, at *5 (E.D.N.Y. Oct. 1, 2022) (citing Goshen v. Mut. Life Ins. Co., 98 N.Y.2d 314, 324 n.1 (2002)) ("[T]he standard for recovery . . . is . . . identical to Section 349."); see also Cosgrove v. Or. Chai, Inc., 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) ("The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349.") (citation omitted). Successful claims under Sections 349 and 350 require the gravamen of the complaint to be "consumer injury or harm to the public at large." Electra v. 59 Murray Enters., Inc., 987 F.3d 233, 258 (2d Cir. 2021) (quoting Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995)).

Plaintiff's Complaint alleges that Defendants' "clandestine investigation, the facts and conclusions of which Defendants would not reveal to Plaintiff by correspondence nor to Plaintiff's attorney by correspondence," as well as their freezing and seizing of his

Account, constituted deceptive acts and practices. (Compl. ¶ 62.) Plaintiff further alleges that Defendants' made misrepresentations in their marketing statements concerning the availability of a customer's funds. (Id. ¶ 63.) With respect to Section 350, Plaintiff alleges that Defendants "falsely advertised that [their] banking services were simple and that information was accessible." (Id. ¶ 70.)

With respect to his Section 349 claim, Plaintiff's Complaint fails to identify any statements in Defendants' marketing materials or Account Disclosures that pertain to investigations of any sort or the "freezing and seizing" of accounts in general. In fact, the portions of the Account Disclosures quoted in Plaintiff's Complaint clearly delineate that there are certain restrictions with respect to bank accounts maintained by Defendants and advise customers of the possibility of the closure of such accounts. (Id. ¶ 16.) For these reasons, this Court finds that Plaintiff's Complaint fails to state a claim for relief pursuant to Section 349 of the New York General Business Law and, as such, the claim should be dismissed.

Plaintiff's Section 350 claim fares no better. As with the Section 349 claim, the Complaint fails to identify any statements in Defendants' advertising materials wherein Defendants stated that their banking services are "simple." Rather, as set forth above, the portions of the Account Disclosures quoted in the Complaint clearly state that there are certain restrictions associated with the usage and termination of all bank accounts maintained with Defendants. Accordingly, Plaintiff's Section 350 claim fails to state a claim and should be similarly dismissed.

C.   Breach of the Covenant of Good Faith and Fair Dealing

"The covenant of good faith and fair dealing inheres in every contract

10

governed by New York law and 'encompasses any promises that a reasonable promisee would understand to be included.'" Smith v. Home Depot U.S.A., Inc., No. 2021 WL 4904572, at *4 (E.D.N.Y. Oct. 21, 2021) (quoting New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 318 (1995)). Where a good faith claim for breach of the implied covenant of good faith and fair dealing "'arises from the same facts and seeks the same damages as a breach of contract claim, it should be dismissed' as duplicative." Smith, 2021 WL 4904572, at *4 (quoting Mill Fin., LLC v. Gillett, 992 N.Y.S.2d 20, 25 (1st Dep't 2014)); see also Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."). "'It is enough' that the two causes of action 'arise from the same operative facts'; 'the conduct alleged . . . need not be identical in every respect.'" Smith, 2021 WL 4904572, at *4 (quoting Mill Fin., LLC, 992 N.Y.S.2d at 25). Only where a defendant engages in "additional conduct to realize gains" from a plaintiff, while also "depriving the plaintiff of the benefits of the parties' agreement," may the two causes of action be pled together. Smith, 2021 WL 4904572, at *4 (quoting A.D.E. Sys., Inc. v. Quietside Corp., 136 N.Y.S.3d 95, 98 (2d Dep't 2020)).

Here, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing arises out of the same operative facts – that Defendants prevented Plaintiff from accessing the monies in his Account. The Complaint fails to allege any additional conduct on Defendants' part separate and apart from their actions of freezing and closing Plaintiff's Account. Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is duplicative of his breach of contract claim and, as such,

11

should be dismissed.

D.   Negligence

To state a claim for negligence under New York law, Plaintiff must show the following: "(1) that the defendant owed the plaintiff a cognizable duty of care, (2) that the defendant breached that duty, and (3) that the plaintiff suffered damages as a proximate result of that breach." Henry v. Capital One, N.A., No. 21-cv-2281, 2022 WL 1105181, at *2 (E.D.N.Y. Apr. 13, 2022) (quoting King v. Crossland Sav. Bank, 111 F.3d 251, 255 (2d Cir. 1997)). Plaintiff's Complaint alleges that Defendants "owed a duty to safeguard Plaintiff's deposits and to accurately and completely report to Plaintiff about the activity in his savings account, and to make such deposited monies available to Plaintiff." (Compl. ¶ 79.) Plaintiff asserts that Defendants breached these duties when they froze his Account, which caused harm to Plaintiff. (Id. ¶ 80).

In support of their motion to dismiss, Defendants argue that it is well-established that a bank does not owe a duty to safeguard customers' accounts, citing a case from the Western District of Virginia. (Def. Mem. of Law 13.) Notably absent from this argument is any supporting caselaw from New York and the Court's independent research has failed to produce any. Accordingly, this argument should be rejected.

Defendants further argue that Plaintiff's negligence claim is barred by the economic loss doctrine. Pursuant to a "longstanding New York rule," known as the economic loss doctrine, "economic loss is not recoverable under a theory of negligence." Bibicheff v. PayPal, Inc., No.2:17-cv-4679, 2020 WL 2113373, at *4 (E.D.N.Y. May 4, 2020) (quoting Labajo v. Best Buy Stores, L.P., 478 F. Supp. 2d 523, 532 (S.D.N.Y. 2007) (additional citation omitted). "Thus, if a plaintiff does not allege 'personal injury or

12

property damage' and [his] allegations are 'purely limited to economic loss . . . [his] remedies are limited and [he] may not sue in negligence.'" Bibicheff, 2020 WL 2113373, at *4 (quoting Labajo, 478 F. Supp. 2d at 532). An exception to this rule "exists where the defendant has a duty independent of contractual obligations." Holborn Corp. v. Sawgrass Mut. Ins. Co., 304 F. Supp. 3d 392, 397 (S.D.N.Y. 2018). As Plaintiff has alleged purely economic losses herein, and has not alleged any independent duty on Defendants' part aside from the parties' contractual relationship, the Complaint fails to state a claim for negligence.

In his opposition to Defendants' motion, Plaintiff now states that his Complaint alleges "a taking of his personal property and a failure to return it after a demand," making it "essentially a trespass to chattels." (Pl. Mem. of Law 15.) It is "well-settled that a plaintiff cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss." Peacock v. Suffolk Bus Corp., 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (alterations in original). As a result, "new factual allegations and theories raised for the first time in opposition are not properly before the Court on a motion to dismiss." JBrick, LLC v. Chazak Kinder, Inc., No. 21-CV-2883, 2022 WL 17177854, at *4 n.3 (E.D.N.Y. Nov. 23, 2022) (quoting In re Sun Property Consultants Inc., 629 B.R. 682, 716 (E.D.N.Y. May 17, 2021)) (additional citation omitted).

Based on the foregoing, Plaintiff's negligence claim is barred by the economic loss doctrine and, as such, the Complaint fails to state a claim upon which relief may be granted. This Court respectfully recommends that Defendants' motion to dismiss be granted with respect to this claim.

13

      E.      <u>Negligent Infliction of Emotional Distress</u>

      To plead a claim for negligent infliction of emotional distress under New York law, a plaintiff must allege: "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." <u>Francis v. Kings Park Manor, Inc.</u>, 992 F.3d 67, 81 (2d Cir. 2021). "Actions for negligent infliction of emotional distress generally require a plaintiff to be put at risk of physical injury or be 'caused to fear for their physical safety.'" <u>Miyamoto v. Bank of America, N.A.</u>, No. 2:19-CV-445, 2022 WL 4134320, at *3 (E.D.N.Y. Sept. 12, 2022) (quoting <u>Pirelli v. OCWEN Loan Servicing, LLC</u>, 12 N.Y.S.3d 110, 114 (2d Dep't 2015)) (additional citation omitted).

      The within Complaint contains no allegations whatsoever that Defendants' actions placed Plaintiff at a risk of physical harm or caused him to fear for his physical safety. Plaintiff attempts to save the claim by arguing that the freezing of his Account "rendered him without funds to pay for life's basic necessitites, . . . thus jeopardizing Plaintiff's physical safety." (Pl. Mem. of Law 17.) However, such allegations simply do not exist in the Complaint. Accordingly, Plaintiff's Complaint fails to state a claim for negligent infliction of emotional distress and the claim should be dismissed.

      F.      <u>Fraud</u>

      Count VII of Plaintiff's Complaint alleges that Defendants made materially false representations to induce Plaintiff to enter into a contractual agreement with Defendants and that Plaintiff relied on these misrepresentations. (Compl. ¶¶ 89, 91.)

To plead a claim for fraudulent inducement, a plaintiff must demonstrate four elements: "(1) a material misrepresentation of a presently existing or past fact; (2) an intent to deceive; (3) reasonable reliance on the misrepresentation by the plaintiff; and (4) resulting damages." Rockaway Beverage, Inc. v. Wells Fargo & Co., 378 F. Supp. 3d 150, 166 (E.D.N.Y. 2019) (citing Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 62 (2d Cir. 2012)).

In addition, pursuant to Federal Rule of Civil Procedure 9(b), fraud claims must be pled with particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). As the Second Circuit has repeatedly held, Rule 9(b) "requires the plaintiff '(1) to specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Nakahata v. New York-Presbyterian Healthcare Sys., 723 F.3d 192, 197 (2d Cir. 2013) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)) (additional citations omitted). "Conclusory statements and allegations are not enough to meet the Rule 9(b) pleading requirements." Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., No. 11 Civ. 4509, 2013 WL 1385210, at *4 (S.D.N.Y. Mar. 18, 2013) (quoting Musalli Factory for Gold & Jewelry Co. v. JPMorgan Chase Bank, N.A., 382 Fed. Appx. 107, 108 (2d Cir. 2010)).

The plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent." Nakahata, 723 F.3d at 198 (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 175 (2d Cir. 2004)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious

misbehavior or recklessness." <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994) (citing cases). "To show motive and opportunity, a plaintiff must allege that the defendant 'benefitted in some concrete and personal way from the purported fraud.'" <u>Goonewardena v. Forster & Garbus LLP</u>, No. 18-CV-00029, 2019 WL 121677, at *7 (E.D.N.Y. Jan. 7, 2019) (quoting <u>ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.</u>, 553 F.3d 187, 198 (2d Cir. 2019)) (additional citation omitted).

Here, Plaintiff's Complaint fails to plead fraud with any semblance whatsoever of particularity. While Plaintiff asserts that Defendants made misrepresentations, he fails to specify who made the statements, what the content of those statements were, where the statements were made, or when they were made. Suck a lack of specificity is fatal to a fraud claim. See <u>Beth Israel Med. Ctr.</u>, 2013 WL 1385210, at *4; <u>see also</u> <u>Alnwick v. European Micro Holdings, Inc.</u>, 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003) ("Conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.").

In response to Defendants' motion to dismiss the fraud claim, Plaintiff argues that he is advancing a "fraud on the market theory" for false product information and makes vague references to Section 10(b) of securities law. (Pl. Mem. of Law 20-21.) Not only are Plaintiff's arguments wholly irrelevant since there are no allegations in this action that Defendants sold Plaintiff any securities, but as with Plaintiff's negligence claim, the law is clear that Plaintiff cannot assert new facts or theories for the first time in opposition to a motion to dismiss. See <u>Peacock</u>, 100 F. Supp. 3d at 231.

Based on the foregoing, Plaintiff's fraud claim fails to state a claim upon which relief may be granted and Defendants' motion to dismiss this claim should be granted.

G.    New York General Obligations Law

Plaintiff's eighth cause of action asserts that Defendants violated Section 5-1501 of the New York General Obligations Law, which "requires recognition of statutorily conforming powers of attorney," Robinson v. I.C. Sys., Inc., No. 16-cv-2972, 2016 WL 6462278, at *2 (E.D.N.Y. Nov. 1, 2016), by insisting that Plaintiff serve a subpoena for information relating to the freezing of the Account instead of providing the requested information to his attorney. (Compl. ¶ 103.) However, the statute Plaintiff relies on "provides that enforcement is exclusively by special proceeding, i.e., a proceeding akin to mandamus to compel the institution to accept the power of attorney." Robinson, 2016 WL 6462278, at *2 (citing N.Y. Gen. Oblig. L. §§ 5-1504(2), 5-1510). "There is no action for damages." Id.

Accordingly, Plaintiff's claim for violation of Section 5-1501 of the New York General Obligations Law fails as a matter of law and Defendants' motion to dismiss this claim should be granted.

H.    Plaintiff's Claim for Declaratory and Injunctive Relief

Plaintiff's Complaint contains a separate cause of action regarding his "entitlement to declaratory relief and injunctive relief," which seeks to declare portions of the Bank Secrecy Act unconstitutional. (Compl. ¶¶ 106-16.) It is well-settled, however, that "declaratory judgment is a form of relief, not a substantive cause of action." Lighton Indus., Inc. v. Allied World Nat'l Assurance Co., 348 F. Supp. 3d 167, 182 (E.D.N.Y. 2018) (citing cases). Moreover, "[a] plaintiff cannot maintain a claim for declaratory judgment where the underlying substantive claim has been dismissed since the Declaratory Judgment Act only created a procedural mechanism and not an independent

17

cause of action." Limtung v. Thomas, No. 19-CV-3646, 2021 WL 4443710, at *9 (E.D.N.Y. Sept. 28, 2021). Where, as here, a plaintiff's underlying substantive claims are dismissed for failure to state a claim, the plaintiff is "not entitled to independent declaratory relief." Roller v. Red Payments, LLC, No. CV 19-5285, 2022 WL 4226094, at *7 (E.D.N.Y. Sept. 12, 2022) (citing cases). Based on the foregoing, Plaintiff's ninth cause of action for a declaratory judgment should be dismissed.

III.    COFC and COBUSANA Should be Dismissed with Prejudice

Defendants seek to have COFC and COBUSANA dismissed with prejudice, arguing that the three defendants are separate, distinct entities and that the Account Disclosures specify that Plaintiff's banking relationship was only with CONA, not COFC or CUBUSANA. (Def. Mem. of Law 15-16.) Defendants further argue that the Complaint fails to indicate that Plaintiff had any relationship with COFC or COBUSANA, but instead improperly refers to all three entities as one. (Id. 16.) In response, Plaintiff does not dispute Defendants' arguments. Rather, he asserts that because there is a "special relationship" between a bank and its holding company, COFC and COBUSANA should not be dismissed from this action. (Pl. Mem. of Law 23.) Plaintiff further argues that all three defendants "owe legal duties and responsibilities to a depositor," such as Plaintiff, "because they are operating and/or controlling a depositor institution and they are required to follow all laws, including those that protect consumers." (Id. 24.)

The Court agrees with Defendants. The Account Disclosures, of which this Court may properly rely upon since they are expressly quoted from in the Complaint, and upon which the Complaint heavily relies, specifically state that "[t]he words 'the bank,' 'our,' 'us,' 'we,' and 'Capital One' mean Capital one, N.A."

https://www.capitalone.com/bank/disclosures/checking-accounts/simply-checking/ (last visited Jan. 17, 2023). Nothing in the Account Disclosures refer to COFC or COBUSANA. Nor has Plaintiff identified any interactions or relationship with either of those two entities. Rather, it is clear that Plaintiff's only relationship is with CONA. Accordingly, all claims alleged against Defendants COFC and COBUSANA should be dismissed, with prejudice.

IV.    <u>Leave to Replead</u>

In his opposition to Defendants' motion to dismiss, Plaintiff requests leave to replead to cure any deficiencies in his Complaint. This Court respectfully recommends that Plaintiff be granted leave to replead with respect to certain, but not all, claims.

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>see also</u> Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "Nonetheless, courts may deny leave to replead where amendment qualifies as futile." <u>Herbert v. Delta Airlines</u>, No. 12-CV-1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014) (citing <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000)). The instant motion raises the possibility that amending some of the claims asserted could survive a motion to dismiss. However, amendment of the claims for violation of Section 5-1501 of New York's General Obligations Law (Count VIII) and for declaratory and injunctive relief (Count IX) would be futile for the reasons set forth above. Accordingly, this Court respectfully recommends that Plaintiff be granted leave to replead but only with respect to Counts I through VII of the Complaint. When deciding whether to amend, Plaintiff should be mindful of the caselaw cited herein.

Moreover, Defendants COFC and COBUSANA should be dismissed with prejudice. It is clear from the Account Disclosures – which form the basis for this action – that Plaintiff's only relationship was with CONA. Amending the Complaint to include further allegations with respect to COFC and COBUSANA will not cure this deficiency. Therefore, it is respectfully recommended that all claims against Defendants COFC and COBUSANA be dismissed with prejudice.

RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion to dismiss be granted in part and denied in part. Specifically, the Court recommends that the motion be denied with respect to Defendants' preemption argument but granted in all other respects. Finally, the Court recommends that Plaintiff be granted leave to replead only with respect to Counts I through VII of the Complaint and that all claims against Defendants COFC and COBUSANA be dismissed with prejudice.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to

object timely to a magistrate's report operates as a waiver of any further judicial review of the

magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
      February 28, 2023                   /s/     Anne. Y. Shields
                                         ANNE Y. SHIELDS
                                         United States Magistrate Judge